FILED

18 AUG 16 PM 6:22

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

June 2017 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. **18 CR 3656 JLS** |
| v. | I N D I C T M E N T |
| DAVID WILLIAMS HAAS, | Title 18, U.S.C., Sec. 371 – Conspiracy To Commit Bribery; Title 18, U.S.C., Sec. 201(b)(2)(A) and (C) – Bribery; Title 18, U.S.C., Secs. 1349, 1346 and 1343 – Conspiracy To Commit Honest Services Fraud; Title 18, U.S.C., Sec. 981(a)(1)(C), and Title 28, U.S.C., Sec. 2461(c) – Criminal Forfeiture |
| Defendant. | |

The grand jury charges that, at all times relevant:

1.     Defendant DAVID WILLIAMS HAAS, ("HAAS"), was an active-duty Officer in the United States Navy.   From September 2001 to June 2003, as a Lieutenant Commander, HAAS was the Executive Officer onboard the USS Blue Ridge, the command ship for the U.S. Navy's Seventh Fleet based out of Yokosuka, Japan.   In this position, HAAS was responsible for the safe operation, upkeep, and material condition of the Seventh Fleet flagship, as well as command over U.S. Navy officers and enlisted sailors.   From June 2003 to June 2005, HAAS was the Command, Control,

MWP:PAHO:nlv:San Diego:8/16/18

Computer, Communications, Information, Surveillance and Reconnaissance Officer onboard the USS Essex, an amphibious assault ship based in Sasebo, Japan. In this position, HAAS was responsible for leading a department of over 160 U.S. Navy officers and enlisted sailors and operating the ship's communications suite and all of the ship's self-defense combat systems. From July 2005 until January 2008, HAAS, now as a Commander, held various additional positions of responsibility in the U.S. Navy. From February 2008 to September 2009, HAAS was the Commanding Officer of the USS Thach, a U.S. Navy frigate based out of San Diego, CA. In this position, HAAS was responsible for all operations of the ship and over 200 U.S. Navy officers and enlisted sailors under his command.

2.   Following his promotion to Captain, from August 2011 to July 2013, HAAS was the Operations Officer for the U.S. Navy's Seventh Fleet, a position also known by the moniker "N3" or Maritime Operations Center Director, onboard the USS Blue Ridge. In this position, HAAS was responsible for directing all Seventh Fleet operations including missile defense, disaster relief and exercises, and administering a $1.5 billion fuel budget.

3.   As an Officer in the United States Navy, HAAS was a "public official" within the definition of Title 18, United States Code, Section 201(a)(1), and as such, HAAS owed a fiduciary duty to both the U.S. Navy and the American public.

4.   Leonard Glenn Francis, ("Francis"), charged elsewhere, was a citizen of Malaysia, residing in Singapore. Francis was the Chief Executive Officer and President of Glenn Defense Marine (Asia) ("GDMA"), a multi-national corporation with headquarters in Singapore. As of September 2013, GDMA had operating locations in many countries,

1 including Japan, Thailand, Malaysia, Korea, Hong Kong, Indonesia,
2 Australia, Philippines, and the United States.  GDMA's main business
3 involved the "husbanding" of marine vessels, a service it had provided
4 across the Seventh Fleet's area of responsibility under various
5 contracts with the U.S. Navy for over 25 years.  "Ship husbanding"
6 involves the coordinating, scheduling, and direct and indirect
7 procurement of items and services required by ships and submarines when
8 those vessels arrive at port.  Examples of these items and services
9 included, among others, tugboats; fenders; port authority or customs
10 fees; security; food; fuel; water; trash removal; collection, holding,
11 and transfer of liquid waste ("CHT"); and transportation, among many
12 others.

13    5.  Alex Wisidagama, ("Wisidagama"), charged elsewhere, a citizen
14 of Singapore, was GDMA's Global Manager for Government Contracts.

15    6.  Neil Peterson ("Peterson"), charged elsewhere, a citizen of
16 Singapore, was GDMA's Vice President of Global Operations.

17    7.  Michael Misiewicz, ("Misiewicz"), charged elsewhere, was an
18 active duty Commander in the United States Navy.  From January 2011 to
19 2012, Misiewicz was the Deputy Operations Officer for the U.S. Navy's
20 Seventh Fleet, also known by the moniker "N3B."  In this position,
21 Misiewicz was HAAS's second-in-command from August 2011 until December
22 2012, when Misiewicz left the Seventh Fleet.

23    8.  In an effort to build and solidify a corrupt relationship with
24 HAAS, from in or about 2003 until 2011, Francis routinely entertained
25 HAAS throughout the Seventh Fleet area of responsibility, including by
26 throwing lavish parties at five star hotels and opulent restaurants,
27 plying HAAS with hotel rooms, entertainment, and alcohol, and providing
28 HAAS with the frequent services of prostitutes.

## Official Duties

9.     HAAS, as an officer in the U.S. Navy, had and was assigned various official duties, including, but not limited to those found in the United States Navy Regulations; Department of Defense Directive ("DoDD") 5500.07 (Standards of Conduct), DoDD 5500.07-R (Joint Ethics Regulations), and supplements thereto, including 5 C.F.R. Part 2625 (Standards of Ethical Conduct for Employees of the Executive Branch), and 5 C.F.R. Part 3601 (Supplemental Standards of Ethical Conduct for Employees of the Department of Defense); and Executive Order 12674 (Principles of Ethical Conduct).

10.     Among many others, the official duties of Officers in the U.S. Navy include (1) acquainting themselves with, obeying and, so far as their authority extends, enforcing the laws, regulations, and orders relating to the Department of the Navy; (2) faithfully and truthfully discharging the duties of their offices to the best of their ability in conformance with existing orders and regulations and their solemn profession of the oath of office (Article 1130); (3) requiring themselves to show a good example of virtue, honor, patriotism, and subordination; to be vigilant in inspecting the conduct of all persons who are placed under their command; to guard against and suppress all dissolute and immoral practices, and to correct, according to the laws and regulations of the U.S. Navy, all persons who are guilty of them; and take all necessary and proper measures, under the laws, regulations and customs of the naval services, to promote and safeguard the morale, the physical well-being and the general welfare of the officers and enlisted persons under their command or charge (Article 1131); (4) reporting as soon as possible to superior authority all offenses under the Uniform Code of Military Justice ("UCMJ") which come under their observation (Article

1137);  (5)  complying  with  all  directives  issued  by  the  Secretary  of
Defense and Secretary of the Navy regarding the Standards of Conduct and
Government  Ethics  (Article  1110);  and  (6)  reporting  in  writing  any
fraudulent,  collusion,  or  improper  conduct  by  a  U.S.  Navy  contractor
(Article 1115).

    11.   To perform his duties, HAAS held a "Secret" or "Top Secret"
clearance  as  a  prerequisite  to  handling  various  types  of  classified
information.   Additional  regulations  prescribe  the  official  duties  of
U.S. Navy Officers in the handling of classified information, including
DoDD 5200.02r, which requires among other duties that individuals having
access to classified information must promptly report to their security
office:  any  unauthorized  disclosure  to  any  person  of  classified
information or of other information, disclosure of which is prohibited
by Statute, Executive Order, or Regulation (C2.2.1.5); the disregard of
public  law,  Statute,  Executive  Order,  or  Regulation  (C2.2.1.7);  any
criminal  or  dishonest  conduct  (C2.2.1.8);  any  acts  of  omission  or
commission  that  indicate  poor  judgment,  unreliability,  or
untrustworthiness (C2.2.1.9); any vulnerability to coercion, influence,
or  pressure  that  may  cause  conduct  contrary  to  the  national  interest
(C2.2.1.11);  and any acts of sexual misconduct or perversion indicative
of  moral  turpitude,  poor  judgment,  or  lack  of  regard  for  the  laws  of
society  (C2.2.1.17).  Co-workers  shoulder  an  equal  official  duty  to
report when "they become aware of information with potentially serious
security  significance  regarding  someone  with  access  to  classified
information" in a sensitive position (C9.1.5).

    12.   DoDD 5240.06 prescribes the official duties of Department of
Defense  personnel,  including  HAAS,  related  to  counterintelligence
awareness  and  reporting.   In  particular,  DOD  personnel  must  report

certain enumerated contacts, activities, indicators, and behaviors as potential foreign intelligence entity threats against the DOD, its personnel, information, materiel, facilities, and activities or against U.S. national security.   Mandatory reporting obligations inure to the following activities: any improper handling or disclosure of classified information; attempts to entice co-workers into criminal situations that could lead to blackmail or extortion; attempts to entice DOD personnel into situations that could place them in a compromising position; and attempts to place DOD personnel under obligation through special treatment, favors, gifts, or money.

## Count 1
## Conspiracy To Commit Bribery
## (18 U.S.C. § 371)

13.   The allegations in Paragraphs 1 through 12 of this Indictment are hereby re-alleged and incorporated herein.

14.   From in our about October 2011 to September 2013, on the high seas and out of the jurisdiction of any particular district, defendant DAVID WILLIAMS HAAS, ("HAAS"), a public official, U.S. Navy Commander Michael Misiewicz, ("Misiewicz"), Leonard Francis, ("Francis"), and others (1) knowingly and unlawfully combined, conspired, and agreed to commit bribery; that is, HAAS, Misiewicz, Francis, and others knowingly agreed that, in return for HAAS and Misiewicz being influenced in the performance of official acts and in return for HAAS and Misiewicz being induced to do and omit to do acts in violation of their official duties, as opportunities arose (a) Francis and others directly and indirectly, corruptly gave, offered, and promised things of value to HAAS and Misiewicz, including travel, meals, alcohol, entertainment expenses, hotel rooms, and the services of prostitutes; and (b) HAAS and Misiewicz

1  would directly and indirectly, corruptly demand, seek, receive, accept,
2  and agree to receive and accept these things of value; and (2) HAAS,
3  Misiewicz, and Francis took overt acts in furtherance of this conspiracy
4  and to effect its objects, all in violation of Title 18, United States
5  Code, Sections 201(b)(1)(A) and (C), and 201(b)(2)(A) and (C).

6                        OBJECTS OF THE CONSPIRACY

7       15.  It was an object of the conspiracy for HAAS and Misiewicz to
8  use their official position and influence in the U.S. Navy to perform
9  official acts; to exert pressure on other officials to perform official
10 acts; and to advocate before and advise other officials, knowing and
11 intending that such advocacy and advice would form the basis for their
12 official acts; all to advance GDMA's interests, as questions, matters,
13 and controversies regarding GDMA's ship husbanding business were brought
14 to HAAS's and Misiewicz's attention; and in return, Francis and others
15 would offer and give a stream of benefits to or on behalf of HAAS and
16 Misiewicz, including travel, meals, alcohol, entertainment expenses,
17 hotel rooms, and the services of prostitutes.

18      16.  It was a further object of the conspiracy for HAAS and
19 Misiewicz to do and omit to do acts in violation of their official
20 duties, and in return, Francis and others offered and gave a stream of
21 benefits to HAAS and Misiewicz, including travel, meals, alcohol,
22 entertainment, hotel rooms, and the services of prostitutes.

23                   MANNERS AND MEANS OF THE CONSPIRACY

24      17.  In furtherance of this conspiracy, and to accomplish its
25 objects, the following manners and means were used, among others:

26           a.   Francis offered and gave a stream of benefits to HAAS and
27 Misiewicz, including travel, meals, alcohol, entertainment, hotel rooms,
28 and the services of prostitutes.

b.   HAAS and Misiewicz sought, received, and accepted these things of value from Francis.

c.   In return for this stream of things of value from Francis, HAAS and Misiewicz agreed to perform official acts; to exert pressure on other officials to perform official acts; and to advocate before and advise other officials, knowing and intending that such advocacy and advice would form the basis for their official acts, all to advance GDMA's interests as questions, matters, and controversies regarding GDMA's ship husbanding business were brought to HAAS's and Misiewicz's attention.

d.   HAAS and Misiewicz provided Francis with classified U.S. Navy ship schedules.

e.   HAAS and Misiewicz provided Francis with internal, proprietary U.S. Navy information.

f.   HAAS and Misiewicz exerted pressure on other U.S. Navy officials, and advocated for and provided advice to other U.S. Navy officials, knowing and intending that such advocacy and advice would form the basis for such other officials' decisions to direct ships to ports that were more lucrative for Francis and GDMA.

g.   HAAS and Misiewicz took official acts and exerted pressure on, advocated before, and provided advice to other U.S. Navy officials, knowing and intending that such advocacy and advice would form the basis for such other officials' decisions to pay GDMA's claims, overlook inflated invoices, suppress competition in contract awards, and resolve in GDMA's favor other questions, matters, and controversies regarding GDMA's husbanding business.

h.   In return for this stream of benefits from Francis, HAAS and Misiewicz were induced to do and omit to do acts in violation of

8

their official duties, including, among many others, receiving and failing to report others' receipt of things of value from a defense contractor, a prohibited source; failing to guard against and suppress and correct dissolute and immoral practices; failing to promote and safeguard the morale, physical well-being, and general welfare of other U.S. Navy Officers; engaging in and failing to report violations of the UCMJ; and failing to report fraudulent and improper conduct by a U.S. Navy contractor.

   i.   In return for this stream of benefits from Francis, HAAS and Misiewicz were induced to do and omit to do acts in violation of their official duties with respect to classified information, including, engaging in and failing to report acts of omission or commission that indicate poor judgment, unreliability, or untrustworthiness; failing to report vulnerability to coercion, influence, or pressure that may cause conduct contrary to the national interests, and engaging in and failing to report others' acts of sexual misconduct or perversion indicative of moral turpitude, poor judgment or lack of regard for the laws of society.

   j.   In return for this stream of benefits from Francis, HAAS and Misiewicz were induced to do and omit to do acts in violation of their official duties with respect to foreign intelligence threats, including engaging in and failing to report others' improper handling and disclosure of classified information; engaging in and failing to report attempts to entice co-workers into criminal situations that could lead to blackmail or extortion; engaging in and failing to report attempts to entice DOD personnel into situations that could place them in a compromising position; and failing to report attempts to place DOD personnel under obligation through special treatment, favors, gifts, or money.

k. HAAS and Misiewicz identified and vetted potential successors in their corrupt relationship with Francis, evaluating candidates for their ability to perform official acts on Francis's behalf, provide Francis with classified and internal, proprietary information, and exert pressure on, advocate before, and provide advice to other officials on questions, matters, and controversies regarding GDMA's ship husbanding business, knowing and intending that such advocacy and advice would form the basis for such other officials' decisions, as well as for their perceived discretion, and willingness to accept items of value from Francis.

l. HAAS and Misiewicz sought to conceal their corrupt relationship with Francis by communicating with Francis using private email accounts, rather than their U.S. Navy accounts.

<u>OVERT ACTS</u>

18. In furtherance of the conspiracy and to effect its objects, the following overt acts, among others, were committed:

A1. On or about November 5, 2011, while HAAS was the Director, Maritime Operations ("N3"), Seventh Fleet Staff aboard the USS Blue Ridge, Francis met with HAAS and Misiewicz at Francis's room at the Ritz Carlton Hotel in Tokyo, Japan, before taking them to dinner at the hotel's Teppanyaki restaurant and providing them with prostitutes, at a cost of over $20,000.

A2. In Fall 2011, Francis paid for a "50th Birthday" party for the wives of HAAS and others.

A3. On or about November 8, 2011, HAAS directed Misiewicz to forward to Francis an internal U.S. Navy email regarding the arrangements and schedule for an upcoming port visit to Manila, Philippines, by the USS Fitzgerald.

A4.   On or about November 24 to 25, 2011, a GDMA Manager, Ed Aruffo, charged elsewhere, provided HAAS with a suite at the New Sanno Hotel in Tokyo, Japan.

A5.   On or about November 25, 2011, Misiewicz emailed describing resistance to the idea of aircraft carrier port visits in Sepangar, Malaysia, but reassuring Francis, "Believe me, I've leaned hard on getting big decks to Sepangar. … Give me a little bit to work your plan, Big Bro."

A6.   On or about December 20, 2011, in an email entitled, "Yet Another Favor," HAAS requested that GDMA provide a hotel room for his friend and friend's family at the New Sanno Hotel for ten days, beginning on December 24, 2011.

A7.   On or about December 31, 2011, Misiewicz provided Francis with classified U.S. Navy ship schedules.

A8.   On or about January 10, 2012, Misiewicz provided Francis with classified U.S. Navy ship schedules.   After reviewing these schedules, Francis emailed Misiewicz demanding that he use his position and influence to "swing" the USS George Washington to Port Klang, Malaysia instead of Singapore.

A9.   On February 6, 2012, Aruffo paid for dinner and transportation for HAAS, Misiewicz, and others in Sapporo, Japan. Aruffo also paid for lavish dinners for HAAS and his wife in Tomakomai, Japan, and Tokyo, Japan, on other occasions in 2012.

A10. On or about March 13, 2012, Francis sent HAAS proprietary cost information from a competing husbanding contractor in Chennai, India, along with an unsolicited proposal that GDMA replace that competing contractor.   Misiewicz replied several hours later, copying HAAS, telling Francis that he would discuss Francis's proposal with the

11

acting Assistant Chief of Staff, Seventh Fleet, for supply and logistics. HAAS's and Misiewicz's advocacy before, and advice to other U.S. Navy officials, thereafter caused Francis to be invited to meet with the Seventh Fleet commander to press his proposal to replace the incumbent contractor in Chennai with GDMA.

A11. On or about March 25, 2012, Francis provided HAAS with a Horizon Club-level room for one night at the Makati Shangri-La Hotel in Manila, Philippines.

A12. On or about April 8, 2012, Misiewicz emailed two other Seventh Fleet officers, copying HAAS, criticizing the Chennai port visit handled by GDMA's competitor. Misiewicz wrote, "Not in our [his and HAAS's] lane, but who was HSP, did we go on the cheap and this is the result, perhaps? This time around let's make sure that the [After Action Report] is collected and preserved so we don't have a repeat the same lessons/pain next time around…"

A13. On or about April 11, 2012, Francis provided transportation and dinner for HAAS and Misiewicz in Yokosuka, Japan.

A14. On or about May 11 to 15, 2012, during an event Francis termed, "Cinderella Liberty," Francis paid for rooms at the Shangri-La Hotel in Jakarta, Indonesia, for HAAS, Misiewicz, and others. The Cinderella Liberty festivities included dinner, entertainment at a night club, alcohol, and the services of prostitutes in Misiewicz's hotel suite where HAAS was present.

A15. On or about May 25, 2012, Francis provided a vehicle and hotel room for HAAS during a port visit in Laem Chabang, Thailand.

A16. On or about June 29 to 30, 2012, in Tokyo, Japan, Francis paid for a two-day party for HAAS, Misiewicz, and others, including transportation, dinner at Nobu Restaurant, and entertainment at several

hostess clubs where the services of prostitutes were provided, all at a total cost of over $75,000.

A17. On or about August 2, 2012, during a dispute between GDMA and the port authority in Hakata, Japan, HAAS advocated before, and provided advice to the Assistant Chief of Staff, Seventh Fleet, on GDMA's behalf, knowing and intending that such advocacy and advice would form the basis for the Assistant Chief of Staff's decisions.

A18. From approximately August 17 to 21, 2012, during a port visit by the USS Blue Ridge to Busan, South Korea, Francis partied with HAAS and Misiewicz, footing the bill for hotel rooms, dinner, drinks, and the services of prostitutes.

A19. On or about September 8, 2012, Misiewicz provided Francis with a list of classified ship schedules.

A20. By email on or about September 14, 2012, despite U.S. Navy contracting personnel's concerns about exorbitant costs, HAAS exerted pressure on, advocated before, and provided advice to the Assistant Chief of Staff, Seventh Fleet in favor of an aircraft carrier port visit to Sepangar, Malaysia, knowing and intending that such pressure, advocacy and advice would form the basis for the Assistant Chief of Staff's decisions. HAAS wrote, "CoS certainly can over rule, but too much riding on Sepanger wrt relationships with the RMN [Royal Malaysian Navy] and their national govt. They have a ton planned and have worked very hard to make this happen. Need to go [Course of Action] 1 or 2[.] [W]ould recommend you pick up the phone and call GDMA personally to get it from the horses mouth."

A21. Misiewicz immediately forwarded HAAS's September 14, 2012 email to Francis, who boasted to his staff, "love it when my plan falls

1  in place like a Movie a GDMA Box Office Classic NAVSUP is IED in my
2  Backyard."

3      A22. On or about September 15, 2012, Francis and Peterson
4  exchanged text messages about HAAS's email to the Assistant Chief of
5  Staff. Peterson wrote "Good one sir, HAAS pushing [the Assistant Chief
6  of Staff's] buttons." Francis replied, "Correct we ambushed them ha ha.
7  By IED."  The USS John C. Stennis did, in fact, make a port visit to
8  Sepangar, Malaysia from September 30 to October 4, 2012, for which GDMA
9  billed the U.S. Navy over $3 million.

10      A23. Following the USS George Washington's port visit to Port
11  Klang, Malaysia and the USS John C. Stennis's port visit to Sepangar,
12  Malaysia, Francis emailed HAAS's and Misiewicz's personal email accounts
13  on or about October 14, 2012, pressing them to exert pressure and
14  advocate for Bali, Indonesia as a port visit location for a U.S. Navy
15  aircraft carrier: "Bro's, I planted Bali [port visit] with CTF 70 [USS
16  George Washington] during the [recent] PKCC [Port Klang] visits.  I did
17  the same with JCS [USS John C. Stennis] in Sepanger.  Let's work on Bali
18  [] for JCS, Nimitz, or GW.  I look forward to this discussion next
19  weekend in Tokyo, rest well love you Bro's :) Missed you since Busan."

20      A24. In about November 2012, Francis sought assistance from
21  HAAS to fight accusations that GDMA had dumped untreated sewage in Subic
22  Bay, Philippines.  Through HAAS's personal email account, Francis sought
23  internal, proprietary information on how the U.S. Navy was handling the
24  accusations and asked HAAS to forward a pro-GDMA Philippine news article
25  to U.S. Navy personnel.  On or about November 22, 2012, HAAS emailed a
26  link to the article to the Assistant Chief of Staff, Seventh Fleet,
27  falsely stated that he had found the pro-GDMA article "online last

28

1  night," and advocated that the Assistant Chief of Staff make others in
2  the U.S. Navy aware of the article.

3          A25. On or about November 23, 2012, in a follow up email, HAAS
4  exerted pressure on, advocated before, and provided advice to the
5  Assistant Chief of Staff against breaking the U.S. Navy's husbanding
6  contract and replacing GDMA as the husbanding agent in the Philippines,
7  knowing and intending that such pressure, advocacy, and advice would
8  form the basis for officials' decisions.

9          A26. On or about November 30, 2012, Francis provided a car and
10  driver for HAAS and Misiewicz from Yokosuka, Japan, to the Ritz Carlton
11  Hotel in Tokyo, Japan, where Francis was staying.  In Francis's room,
12  with HAAS present, Misiewicz handed Francis an envelope of classified
13  long range Seventh Fleet ship schedules, CTF-70 ship schedules, and
14  Seventh Fleet organizational charts.  The schedules were stamped
15  "SECRET" and projected ship visits approximately 14 months in advance.
16  These classified schedules included information related to U.S. Navy
17  ballistic missile defense operations in the Pacific and remain
18  classified.

19          A27. After reviewing the ship schedules, Francis, HAAS and
20  Misiewicz pored over the Seventh Fleet organizational chart, which HAAS
21  and Misiewicz had brought with them, in an effort to identify and
22  evaluate potential successors to the corrupt relationship with Francis
23  when Misiewicz departed the Seventh Fleet, the following month, in
24  December 2012.  Following these discussions, Francis took HAAS and
25  Misiewicz to a strip club where food and prostitutes were provided at a
26  cost of approximately $7,000.

27          A28. On or about February 5, 2013, Francis emailed HAAS's
28  personal email account to set up a meeting to elicit HAAS's assistance

combatting allegations that GDMA was overbilling the U.S. Navy for ship husbanding services in Malaysia and to request updated ship "schedules for the coming months."

A29. On or about February 7 to 8, 2013, Francis paid for a two-day party, in Tokyo, Japan, for HAAS, and other officers, during which Francis provided meals, entertainment, alcohol, and the services of prostitutes, at a total cost of over $30,000.

A30. On or about February 16, 2013, Francis paid for a dinner for HAAS and his wife at Nobu restaurant in Tokyo, Japan.

A31. On or about June 4, 2013, during a USS Blue Ridge port visit to Port Klang, Malaysia, Francis provided HAAS with dinner, a hotel room and spa treatment at the Shangri-La Hotel, Kuala Lumpur, transportation, and the services of prostitutes. Francis's charges at the Shangri-La Hotel were approximately $4,800.

A32. On or about June 8, 2013, during a USS Blue Ridge port visit to Changi Naval Base, Singapore, Francis entertained HAAS at the Tiananmen KTV nightclub and provided HAAS with the services of a prostitute and hotel room at the Furama Hotel.

A33. On or about June 15, 2013, during a USS Blue Ridge port visit to Jakarta, Indonesia, HAAS and another officer flew to Singapore, where Francis entertained them at the Raffles Hotel and then at the Tiananmen KTV nightclub where Francis provided them with the services of prostitutes.  Francis's total cost was over $4,000.

A34. In or about June 2013, HAAS used his official position and influence in the U.S. Navy to perform official acts; exerted pressure on other officials to perform official acts; and advocated before and advised other officials, knowing and intending that such advocacy and advice would form the basis for their official acts in a successful

16

effort to engineer a port visit by the George Washington Carrier Strike Group ("GWCSG") to Port Klang, Malaysia.  On or about June 24, 2013, in an email to his staff after the Port Klang port visit was finalized, Francis wrote, "Yes work on it and screw them nicely, [t]he GWCSG is confirmed in October approved personally by Admiral [] PACFLT and proposed by my brother Capt Dave Hass N3 :) His farewell present to me."

A35. On or about July 13, 2013, during a USS Blue Ridge port visit to Sydney, Australia, Francis provided hotel rooms for HAAS and other U.S. Navy officers at the Shangri-La Hotel, along with an expensive dinner and the services of prostitutes.

A36. In an email dated September 10, 2013, after HAAS had left the Seventh Fleet, Francis asked HAAS for the personal contact information of an individual they had identified as a potential replacement for HAAS and Misiewicz.

All in violation of Title 18, United States Code, Section 371.

## Counts 2-7
### Bribery
### (18 U.S.C. § 201(b)(2)(A) and (C))

19.  The allegations in Paragraphs 1 through 12 of this Indictment are incorporated by reference.

20.  On or about the dates set forth in Column "A," on the high seas and outside the jurisdiction of any particular district, defendant DAVID WILLIAMS HAAS, a public official, directly and indirectly, corruptly demanded, sought, received, accepted, the things of value set forth in Column "B," in return for being influenced in the performance of official acts and in return for being induced to do and omit to do things in violation of his official duties, all as opportunities arose,

including providing classified and other internal, proprietary U.S. Navy information to Francis and GDMA, and using his official position and influence in the U.S. Navy to perform official acts; to exert pressure on other officials to perform official acts; and to advocate before and advise other officials, knowing and intending that such advocacy and advice would form the basis for their official acts; all to advance GDMA's interests, as questions, matters, and controversies regarding GDMA's ship husbanding business were brought to HAAS's attention, with demand, receipt, and acceptance of each thing of value constituting a separate Count:

| COUNT | "A" - DATE | "B" - ITEMS OF VALUE |
|---|---|---|
| 2 | November 7, 2011 | Expenses for HAAS and Misiewicz for a night of partying at hostess and strip clubs in Tokyo, totaling over $20,000 |
| 3 | May 15, 2012 | Expenses for HAAS, Misiewicz, and others for partying, alcohol, and the services of prostitutes in Jakarta, Indonesia, totaling over $5,000 |
| 4 | June 30, 2012 | Expenses for HAAS, Misiewicz, and others for meals, alcohol, and partying at hostess and strip clubs in Tokyo, totaling over $75,000 |
| 5 | August 17-21, 2012 | Expenses for HAAS and Misiewicz for meals, alcohol, and the services of prostitutes in Busan, South Korea, totaling over $10,000 |
| 6 | February 7-8, 2013 | Expenses for HAAS and others for a two-day party in Tokyo that included meals, alcohol, and the services of prostitutes, totaling over $30,000 |
| 7 | June 3-4, 2013 | Expenses for HAAS's stay at Shangri-La Hotel in Kuala Lumpur, Malaysia, and services of prostitutes, totaling approximately $5,000 |

All in violation of Title 18, United States Code, Section 201(b)(2)(A) and (C).

18

1

## Count 8
### Conspiracy To Commit Honest Services Fraud
### (18 U.S.C. §§ 1349, 1346, 1343)

2

3      21.   The allegations in Paragraphs 1 through 12 of this Indictment

4  are hereby re-alleged and incorporated herein.

5      22.   From in or about October 2011 to at least September 2013, on

6  the high seas and out of the jurisdiction of any particular district,

7  defendant DAVID WILLIAMS HAAS, Leonard Francis, charged elsewhere, and

8  others did knowingly and intentionally conspire and agree to devise a

9  material scheme and artifice to defraud the citizens of the United States

10 and the U.S. Navy of their rights to HAAS's honest, loyal, and faithful,

11 services, decisions, actions, and performance, through bribery and

12 kickbacks and the concealment of material information; and for the

13 purpose of executing this scheme, defendants and their conspirators

14 transmitted and caused to be transmitted writings, signs, and signals

15 by means of wire communication in interstate and foreign commerce.

16 All in violation of Title 18, United States Code, Sections 1349, 1346

17 and 1343.

18                            **FORFEITURE ALLEGATIONS**

19     23.   The allegations set forth in Counts 1 through 8 are

20 incorporated by reference for the purpose of alleging forfeiture

21 pursuant to Title 18, United States Code, Section 981(a)(1)(C), and

22 Title 28, United States Code, Section 2461(c).

23 //

24 //

25 //

26 //

27 //

28 //

1    24.    Upon conviction of one or more of the offenses set forth in
2  Counts 1 through 8, defendant DAVID WILLIAMS HAAS, shall forfeit all
3  property, real and personal, which constitutes or is derived from
4  proceeds traceable to Counts 1 through 8 pursuant to Title 18, United
5  States Code, Section 981(a)(1)(C), and Title 28, United States Code,
6  Section 2461(c), including but not limited to a money judgment in an
7  amount not less than the proceeds of the offenses in Counts 1 through 8.
8        DATED: August 16, 2018.

9                                        A TRUE BILL:

10

11                                       Foreperson

12  ADAM L. BRAVERMAN
    United States Attorney
13

14  By: _____
         MARK W. PLETCHER
15       Assistant U.S. Attorney

16

17  By: _____
         PATRICK HOVAKIMIAN
18       Assistant U.S. Attorney

19

20

21

22

23

24

25

26

27

28

                                  20